**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| KAJEET, INC. | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 6:21-CV-389-ADA |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| TREND MICRO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TREND MICRO, INC.'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.  Introduction.................................................................................................................. 1

II.  Background of the '559 Patent .................................................................................. 2

   A.  '559 Patent's Specification ................................................................................ 2

   B.  Prosecution History ............................................................................................ 5

III.  Person of Ordinary Skill in the Art ........................................................................ 6

IV.  Disputed Terms............................................................................................................ 7

   A.  "the decision being based on a policy stored at the server" ........................... 7

      1.  The Intrinsic Record Makes Clear that the Server Applies the Policy..................... 9

      2.  Extrinsic Evidence is Consistent with Trend Micro's Proposed Construction ....... 12

      3.  The Prior *Qustodio* Claim Construction Decision Confirms Trend Micro's Proposed Construction ........................................................................ 13

   B.  "request" ............................................................................................................. 14

      1.  The Intrinsic Record's Use of the Term "Request" Underscores It Should Be Construed as Plain and Ordinary .................................................. 15

      2.  Kajeet's Previous Expert Witness Tacitly Agrees with the Plain and Ordinary Interpretation.............................................................................. 16

      3.  Kajeet's Proposed Construction Introduces Unnecessary, Ambiguous, and Confusing Terminology and Should Be Rejected.................................. 16

V.  Conclusion ................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*CloudofChange, LLC v. NCR Corp.*,
No. 6-19-cv-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020)
(Albright, J.)...........................................................................................................9, 10, 11

*Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*,
501 F.3d 1254 (Fed. Cir. 2007)....................................................................................6

*Digital Retail Apps, Inc. v. H-E-B, LP*,
No. 6-19-cv-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020)
(Albright, J.)................................................................................................................14

*Env'tl Designs, Ltd. v. Union Oil Co. of California*,
713 F.2d 693 (Fed. Cir. 1983)......................................................................................6

*Heat Techs. v. Papierfabrik August Koehler SE*,
No. 18-cv-01229-SDG, 2020 WL 9460993 (N.D. Ga. Nov. 10, 2020)....................18

*InterDigital Comms., LLC v. ITC*,
690 F.3d 1318 (Fed. Cir. 2012)..................................................................................15

*j2 Glob. Commc'ns, Inc. v. Vitelity Comms., LLC*,
2013 WL 5220173 (C.D. Cal. Sept. 13, 2013) ..........................................................18

*Kajeet, Inc. v. Qustodio, LLC*,
No. 18-cv-01519-JAK-PLA, 2019 U.S. Dist. LEXIS 228067 (C.D. Cal. Nov.
1, 2019) ......................................................................................................................13

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)........................................................................1, 9, 14

*PerdiemCo, LLC v. IndusTrack LLC*,
No. 2:15-cv-727-JRG-RSP, 2016 WL 3633627 (E.D. Tex. Jul. 7, 2016) ...............18

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)..............................................................................6, 18

## I.     Introduction

The parties agree that most of the terms in the lone claim asserted by Kajeet—claim 27 of U.S. Patent No. 8,667,559 ("the '559 patent")—require no construction and should be understood according to their plain and ordinary meaning.  The parties also agree that the preamble of the claim should be construed as limiting.  All that remains for the Court to construe are the meanings of two key terms:  (1) "the decision being based on a policy stored at the server" (proposed by Defendant Trend Micro, Inc. ("Trend Micro")); and (2) "request" (proposed by Plaintiff Kajeet, Inc. ("Kajeet")).

Trend Micro's proposed construction for the phrase "the decision being based on a policy stored at the server" clarifies the scope of the term in light of the language of the claims (in the '559 patent and parent patents), the '559 patent's specification, and express statements made by Kajeet during prosecution to distinguish claim 27 over the prior art.  As confirmed by Trend Micro's expert, Dr. Vijay Madisetti, the proposed construction is consistent with the use of the term in the intrinsic record.

Kajeet's proposal to apply the "plain and ordinary meaning" for this term and not offer a construction is inappropriate under the present circumstance.  There is a dispute between the parties as to the plain and ordinary meaning as it relates to the location of the policy that is being used to generate the decision.  Contrary to the plain language of the claim and other intrinsic evidence, which make clear that the policy applied resides on the server, Kajeet's "plain and ordinary" construction encompasses local-based policies that reside on the manage device.  Because Kajeet's construction of this term is not supported by the record, this is the type of dispute that requires guidance from the Court.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008).  For the reasons set forth below, the Court should adopt Trend Micro's proposed construction.

1

There is no such dispute between the parties as to the plain and ordinary meaning of the term "request." Kajeet's proposed construction for the term "request" artificially seeks to restrict the scope of the term to a "communication seeking permission," which finds no support in the intrinsic record. The '559 patent does not provide any express definition for "request," but instead uses the term in its ordinary and customary fashion. Perhaps more importantly, this narrow construction contradicts the opinions of Kajeet's own prior technical expert, Dr. Knuston, in a related litigation involving the '559 patent. Thus, the Court should construe as plain and ordinary the "request" term.

For the reasons stated above and more fully explained below, the Court should adopt Trend Micro's proposed constructions.

## II. Background of the '559 Patent

### A. '559 Patent's Specification

The '559 patent relates to the field of device management and access control. As the specification explains, "[t]he present invention is directed to the real-time management of a device, and more particularly to the establishment and enforcement of policies or rules associated with the feature or functions that may be performed with the device." (D.I. 1-1, '559 patent at 1:47-50.) Such features or functions include making and receiving calls, exchanging data, and accessing websites. (*Id.* at Abstract.) An administrator, "such as a parent, guardian, financier, employer, supervisor, or responsible party" is responsible for the management of the device. (*Id.* at 4:12-18.)

The '559 patent does not claim that its inventors were the first to conceive of managing networked user devices using parental or administrative control in real-time. To the contrary, the specification acknowledges that prior art systems used policies to "establish some measure of parental or administrative control over an [computing device user's] account." (*Id.* at 3:47-48.) In particular, the Background describes the prior art Telcordia$^{TM}$ Converged Real-Time Charging

system as "allow[ing] users to place limited real-time controls over prepaid and postpaid accounts. For example, when an account allows a child to download premium data (data for which a charge is imposed), parental controls over that account can be set to limit that child's spending within a set of parameters." (*Id.* at 3:51-54.)  The specification only distinguishes the Telcordia system from the alleged invention on the ground that it provided "only partial solutions to the problem of providing limits on overspending and other activities by the user while *simultaneously* assuring that the user will always be able to use the phone when appropriately needed." (*Id.* at 3:54-59 (emphasis added).)[1]  But that limitation about the user being always able to use the phone when appropriate (i.e., simultaneously while providing limits) is not found in claim 27.

As shown in Figure 2 below, the '559 patent discloses a management system with a simple architecture that employs a "policy decision point" (PDP) and a "policy enforcement point" (PEP). (*Id.* at 8:19-21, 8:45-47.)  In one embodiment, a request from the mobile station 10[2] is routed to the PEP 28, which works in connection with the PDP 29 to accept or reject the request.  (*Id.* at 8:19-21, 8:45-47.)

---

[1] All emphases added unless otherwise noted.

[2] The specification provides as examples of "phone or mobile station 10" "a cellular phone, smart phone, personal digital assistant ("PDA"), or any other type of mobile computing platform." (D.I. 1-1, '559 patent at 6:41-43.)



**FIG. 2**

(*Id.* at Fig. 2 (annotated).)

The PDP 29 is "a logical element that can be physically housed in the service manager 20 or in another server accessible to either the service manager 20 or the PEP 28." (*Id.* at 8:53-55.) The PDP 29 "maintains or stores a list of policies that have been established to control the features and functions of the mobile station 10 and decides, based on those policies, to either accept or reject the service request." (*Id.* at 8:55-59.)

The PEP 28 is described as "a logical element that can be physically housed in another packet data serving node or a gateway device, depending on the service request." (*Id.* at 8:40-45.) "The PEP 28 is responsible for enforcing a decision by the service manager 20 and policy decision point 29 to accept or reject the service request." (*Id.* at 8:44-47.) Notably, although the specification only describes the PEP as enforcing decisions, it never describes the PEP as being part of the user's mobile device. (Ex. B, Madisetti Declaration at ¶¶ 36-37.)

In this embodiment, the PEP 28 sends the request from mobile station 10 to the PDP 29 for evaluation. (D.I.1-1, '559 patent at 8:45-47; *see also id.* at 18:40-41.) The PDP 29 decides "to either accept or reject the service request" using the policies stored at the PDP. (*Id.* at 8:55-59.)

The PEP 28 then receives a decision from the PDP 29 granting or denying the request and enforces that decision.  (*Id.* at 18:42-52; *see also id.* at 8:45-47.)

### B.      Prosecution History

During prosecution of the application that matured into the '559 patent, Kajeet made several admissions regarding the scope of the claims, specifically as it related to the "distributed architecture" aspect of the alleged invention.  Kajeet made clear that the policies used to make decisions were stored at a server – *not* on the managed device.  For instance, Kajeet represented that claim 27 required "a decision granting or denying a request to communicate with a remote computing device over the communication network" is "based on one or more policies that are *stored at the server*."[3]  (Ex. 1, 10/17/2013 Amendment at 11, 18.)  In distinguishing the prior art over claim 27, and confirming that the server applies a policy to a request to render a decision, Kajeet argued that the prior art did not disclose "a distributed architecture *where policy decisions are performed at the server level and those policies are enforced on the phone itself*."  (*Id.* at 10.) Kajeet further emphasized that the claim required that "[t]he *device* … enforces the response" received from the server.  (*Id.* at 11 (emphasis in original).)  In other words, Kajeet's admissions made a clear delineation between where the decision is made (i.e., at the server) and the enforcement of the decision (i.e., on the device).

Notably, the '559 patent is a continuation application that claims priority to an earlier filed application, U.S. Patent Application No. 11/881,460 ("the '460 Application"), which issued as U.S. Patent No. 7,899,438.  (*See* D.I. 1-1 at Cover; Ex. 2, the '438 patent.)  Originally filed claim 1 of the '460 application included the limitation that the "policy decider … automatically decid[es]

---

[3] While Kajeet made these arguments with respect to claim 1, it argued to the Examiner that "[i]ndependent claim 27 recites similar features as claim 1" and distinguished the prior art "for similar reasons to those noted above with respect to claims 1-26."  (Ex. 1, at 18.)

to accept or deny a request … *based on one or more policies from the list of policies*." (Ex. 3, '460 Application at 33.) However, in a subsequent preliminary amendment, Kajeet removed the "one or more policies" language from the limitation. (Ex. 4, '460 Application, Preliminary Amendment at 3.) This amendment emphasized that the decision results from the server applying the server-stored policy.

## III.   Person of Ordinary Skill in the Art

It is well established that patents are interpreted from the perspective of one of ordinary skill in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). The Federal Circuit has provided several factors that "may be considered in determining the level of skill in the art includ[ing]: (1) the educational level of the inventors; (2) the type of problems encountered in the art; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) sophistication of the technology; and (6) education level of active workers in the field." *Env'tl Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 696 (Fed. Cir. 1983). "These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

Based on these factors, a person of ordinary skill in the art ("POSA") would have had at least a bachelor's degree in computer science or a similar degree such as computer engineering, with at least two years of experience in the development of computer software systems. A person could also have qualified as a POSA with some combination of (1) more formal education (such as a master's of science degree) and less technical experience, or (2) less formal education and

more technical or professional experience in the fields listed above.  (Ex. B, Madisetti Decl. at

¶¶ 21-23.)

## IV.    Disputed Terms

Claim 27 is set forth below for the Court's reference with emphasis on the claim terms in

dispute:

> A method for controlling a computing device configured to execute a function
> using a communication network managed by a service provider, the method
> comprising:
>
>> sending to a server a ***request*** to communicate with a remote computing
>> device over the communication network;
>>
>> receiving in real-time from the server a decision granting or denying the
>> ***request***, ***the decision being based on a policy stored at the server*** and
>> configured by an administrator; and
>>
>> enforcing the decision by enabling a communication with the remote
>> computing device over the communication network when the decision
>> grants the ***request*** and by disabling the communication when the decision
>> denies the ***request***, the communication being enabled or disabled without
>> storing the policy on the computing device.

### A.    "the decision being based on a policy stored at the server"

| Trend Micro's Proposed Construction[4] | Kajeet's Proposed Construction |
|---|---|
| "the decision results from the server applying a policy to the request sent by the computing device" | no construction necessary – plain and ordinary meaning shall apply. |

The limitation "the decision being based on a policy stored at the server" should be

construed to mean "the decision results from the server applying a policy to the request sent by the

computing device."  In other words, the decision is made by the server in response to the request

---

[4] To the extent the Court is inclined to adopt a "plain and ordinary" meaning for this term, Trend
Micro requests that its proposed construction should be adopted as the "plain and ordinary"
meaning.

and is based on a policy stored at the server.  Trend Micro's construction makes clear that the server applies the policy used to generate the decision, which is derived from the language of the claims, the '559 patent's specification, and numerous admissions Kajeet made during prosecution to secure allowance of the claims.[5]

The requirement that the decision results from the server applying a policy to a request is clear from the claim language itself.  However, Kajeet has argued that a plain and ordinary meaning of this limitation would encompass methods where the policy that is actually applied to generate a decision is stored locally on the managed device, so long as that locally stored policy was copied from a "master" policy stored on the server.  (*See, e.g.*, D.I. 14 at 15.)  Indeed, Kajeet represented to this Court that the scope of claim 27 is not limited to methods that apply policies stored at the server: "Trend Micro also fails to recognize that the limitations present in the asserted claims do not go so far as to require that *all policies may only be stored at the server*."  (*Id*.)  In other words, according to Kajeet, the plain and ordinary meaning of this limitation encompasses methods that apply a policy stored on the managed device, which is contrary to the plain and ordinary meaning of the limitation.

By relying on a plain and ordinary construction, Kajeet is attempting to circumvent the limitation's explicit requirement that the policy used to make the decision is "stored at the server."  Therefore, there is a dispute as to the meaning of this limitation as to whether it encompasses applying a policy stored on the managed device to generate a decision.  Under Federal Circuit precedent, this is the type of dispute that warrants the Court's guidance as to the proper claim

---

[5] Trend Micro's construction is consistent with the plain and ordinary meaning of the limitation and only seeks construction for clarification as to the proper meaning of the limitation in view of Kajeet's erroneous interpretation of the plain and ordinary meaning of this limitation in the context of this litigation.

scope.  *See, e.g.*, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008) ("[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."); *see also CloudofChange, LLC v. NCR Corp*., No. 6-19-cv-00513-ADA, 2020 WL 4004810, at *3 (W.D. Tex. July 15, 2020) ("[a]s both parties disagree about the scope of the term, the term requires construction by the Court.") (Albright, J.).

For at least these reasons, Trend Micro seeks clarification from the Court as to the proper scope and meaning of this limitation because its "plain and ordinary" meaning without a construction is inadequate to resolve the parties' dispute as to the term's scope.

### 1.    The Intrinsic Record Makes Clear that the Server Applies the Policy

*First*, the plain language of claim 27 sets forth a workflow where a request is sent to a server and a decision is made at the server using a policy stored at the server.  The recited steps of the claimed method require the computing device to "send[] to a server a request to communicate with a remote computing device."  (D.I. 1-1, '559 patent at 18:41-42.)  In response, the computing device "receive[s] in real-time from the server a decision granting or denying the request."  (*Id.* at 18:41-46.)  Logically, if the computing device *receives* in real-time the decision from the sever, as required by the plain language of the claim, then the computing device itself cannot generate the decision from a policy stored on the device.  Moreover, as explained by the plain language, the decision generated at the server is "based on a policy stored at the server," which further emphasizes that it is the server applying the policy that is stored at the server to render a decision.

The remaining claim language emphasizes the distinction between the activities that take place at the managed computing device and those that occur at the sever level.  For example, the claim explains that "enforcing the decision by enabling a communication with the remote

computing device over the communication network," where the enforcement occurs on the managed computing device. (*Id.* at 18:46-47.)  It also requires that the enforcement of the decision occurs "without storing the policy on the computing device." (*Id.* at 18:52-53.)  Thus, the language of the claim makes clear that the decision is made by the server applying a policy stored on the server in response to a request the server receives from the managed computing device.

The other claims of the '559 patent confirm that the term "based on" in this phrase should be construed as limiting the basis for the decision to only the "policy stored at the server."  Had Kajeet intended to use "based on" in a more open-ended way, they knew exactly what language to use to do so.  Claim 1 of the '559 patent provides an example of both types of uses.  That claim requires "the decision being *based on* one or more policies that are stored at the server," much like claim 27.  (*Id.* at 16:11-12.)  But claim 1 also requires "one or more policies that are … *based at least in part on* input from an administrator." (*Id.* at 16:12-13.)  The latter limitation shows that if Kajeet had intended that the claim encompass methods in which the decision is generated using something other than just the policy stored at the server, they could have used the broad "based at least in part on" language rather than more limited "based on" language that they actually opted to use.

**Second**, the specification of the '559 patent further underscores that the server itself generates the decision (by applying a policy stored at the server) and returns that decision to the managed computing device.  For instance, the specification explains that the policy decision point (PDP) is a separate "logical element that can be physically housed in the service manager 20 or in another server accessible to … the PEP 28." (D.I. 1-1, '559 patent at 8:53-56.)  The specification further expressly states that the "*PDP maintains or stores a list of policies* that have been established to control the features and functions of the mobile station 10 and *decides, based on*

*those* policies, to either accept or reject the service request." (*Id.* at 8:56-57.)  Confirming that the claimed invention does not encompass the use of other policies that may be stored elsewhere (such as on the managed computing device itself), the '559 patent specification explains that even for "user's requests [that] may not have anything to do with making a call or downloading content, but rather just to use some feature or function of the device," "[e]ven in this instance, the device *would need to communicate with the PDP to determine if a policy is in place that would prevent use of the feature or function for some reason.*" (*Id.* at 9:3-9.)  Thus, the specification is clear that the only policy applied to make a decision is the policy stored at the server (i.e. PDP), and that this server-stored policy must be what is used to generate the decision.

*Third*, the requirement that the server generates the decision by applying a policy stored therein is further confirmed by representations Kajeet made to the USPTO to obtain allowance of claim 27.  In response to a prior art rejection, Kajeet expressly distinguished claim 27 on the basis that the prior art did not disclose a limitation where the decisions were made at the policy-storing server:  "Bales does not describe *a distributed architecture* where *policy decisions are performed at the server level.*" (Ex. 1, 10/17/2013 Amendment at 10.)[6,7]  According to Kajeet, "[s]uch a device that enforces a response *from the server* is not disclosed by" the Bales prior art.  (*Id.*)  Accordingly, Kajeet's express statements confirm that the claimed decision results from the server applying the policy to the request sent by the computing device.

---

[6] Contrary to Kajeet's argument during prosecution, that is exactly what the Bales reference disclosed:  "CSCF 76 further includes or has a communication link with various policy servers 84, which contain policy logic for determining how to handle particular communication setup requests and the like."  (Ex. B, Madisetti Decl. at 9 fn. 2 (citing Ex. 9, U.S. Patent Publication No. 2006/0025139 ("Bales") at [0046]).)

[7] As noted above, Kajeet stated that claim 27 was distinguishable for all of the same reasons as discussed in the context of claim 1.  (*See* Ex. 1, 10/17/2013 Amendment at 18.)

***Finally***, the prosecution history of a related application surrounding Kajeet's use of "based on" confirms that the recited basis for the "decision" should be construed in this fashion.  The '460 Application, which ultimately issued as U.S. Patent No. 7,899,438, originally included claims requiring "a policy decider … for automatically deciding to accept or deny a request … *based on one or more* policies from the list of policies."  (Ex. 3, '460 Application at 33.)  But Kajeet chose to delete that broader "one or more" language in a subsequent amendment, instead more narrowly requiring that the decision be "based on the list of policies."  (Ex. 4, '460 Application Preliminary Amendment at 3.)  Thus, both the other claims of the '559 patent and those of the issued parent '438 patent confirm that the "decision being based on" language of claim 27 should be construed to require that the decision results from the server applying the server-stored policy.

### 2.     Extrinsic Evidence is Consistent with Trend Micro's Proposed Construction

Dr. Vijay Madisetti, a Professor of Electrical and Computer Engineering at the Georgia Institute of Technology, has gone through the intrinsic record and concurs that the term should be construed to mean "the decision results from the server applying the policy to the request sent by the computing device."  As Dr. Madisetti explains, the specification describes the architecture of the invention as utilizing a policy decision point (PDP), which may be housed on a server and is never described as being housed on the user's computing device, to store policies, and a policy enforcement point (PEP), which may also be housed on a server but is also never described as part of the user's computing device, to enforce that policy.  (Ex. B, Madisetti Decl. at ¶ 36-37.)  As Dr. Madisetti opines, an ordinary artisan reading the claim language in light of the specification and prosecution history would have understood that the decision results from the server applying the policies to the request sent by the computing device, and returns the decision to the computing device.  (Ex. B, Madisetti Decl. at ¶¶ 26-39.)

### 3. The Prior *Qustodio* Claim Construction Decision Confirms Trend Micro's Proposed Construction

One court has previously addressed a portion of this limitation involving claim 27 of the '559 patent directed to the location of the policy used to generate a decision.[8]  In *Qustodio*, the court was asked to construe the term "a policy stored at the server," which Qustodio represented meant "a rule that is only stored remotely from the computing device at the server, which cannot be accessed by the computing device." *Qustodio*, at *27.  Kajeet requested the court give the term its plain and ordinary meaning.

The court found "no further construction of these claim terms is necessary" because "the *parties cannot reasonably dispute the plain claim language that shows that the claimed policy* and claimed enforcement *step in Claim 27 of the '559 Patent occur remote from the computing device*." *Qustodio,* at *27-29.  In adopting the plain meaning, the *Qustodio* the court did not "reject[] the narrow construction" as Kajeet asserts. (D.I. 14 at 15.)  Rather, the court expressly found "[t]he requirement that both storing a policy … occur remotely is *apparent from the express claim language*" and therefore "Defendant's proposed constructions *would be redundant* of that language as to this claim." *Qustodio*, at *27-29.  Thus, the *Qustodio* court construed the claim in a manner that supports Trend Micro's construction for the present term.

Despite the decision in *Qustodio*, Kajeet continues to advance improper arguments regarding the scope of the claim — disguised under a "plain and ordinary meaning" — that skirt around the clarification offered by the *Qustodio* court.  For example, Kajeet represented to the Court that the scope of claim 27 does not exclude local policies.  (D.I. 14 at 15 ("Trend Micro also fails to recognize that the limitations present in the asserted claims do not go so far as to require

---

[8] *Kajeet, Inc. v. Qustodio, LLC*, No. 18-cv-01519-JAK-PLA, 2019 U.S. Dist. LEXIS 228067, at *27-29 (C.D. Cal. Nov. 1, 2019) (hereinafter referred to as "*Qustodio*").

that *all policies may only be stored at the server*.")).  Likewise, as explained in Trend Micro's

Motion to Dismiss under Rule 12(b)(6), Kajeet's infringement contentions only rely on a user

manual that confirms the policies are set and stored on the managed device.  (*See, e.g.*, D.I. 8,

Trend Micro's Motion to Dismiss, at 11-15.)  As such, Kajeet's assertions are wrong and clearly

contradict the prior claim construction ruling — thus creating the present need to clarify the term

as warranted under *O2 Micro.  See Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-cv-00167-

ADA, 2020 WL 376664, at *9 (W.D. Tex. Jan. 23, 2020) ("because the parties differ with respect

to what the plain-and-ordinary meaning is, the Court will provide a construction for the plain-and-

ordinary meaning.") (Albright, J.).  Because Kajeet continues to misrepresent the location of the

policies and the source of the generated decision as required by claim 27, Trend Micro seeks to

clarify, for the jury, the scope of this limitation.

*       *       *

Thus, based on the intrinsic and extrinsic record, the Court should construe the term "the

decision being based on a policy stored at the server" to mean "the decision results from the server

applying a policy to the request sent by the computing device."

### B.     "request"

| Trend Micro's Proposed Construction | Kajeet's Proposed Construction |
|---|---|
| No construction is necessary.  The term should be given its plain and ordinary meaning. | "communication seeking permission" |

The term "request" is a well-understood term that should be given its plain and ordinary

meaning.  Nothing in the intrinsic record suggests that Kajeet intended to use the term differently

in the context of the '559 patent claims.  (Ex. B, Madisetti Decl. at ¶ 40.)  Importantly, Kajeet did

not act as its own lexicographer by providing any unique and different definition of "request" in

the specification.  *See InterDigital Comms., LLC v. ITC*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) ("[t]he plain meaning of claim language ordinarily controls unless the patentee acts as his own lexicographer and provides a special definition for a particular claim term").  Kajeet's proposed construction is also narrower than and contrary to its well-accepted dictionary definition: "the act or an instance of asking for something" and "something asked for."  (Ex. B, Madisetti Decl. at ¶¶ 41-42; Ex. 6, Webster's Dictionary 2006; Ex. 7, Webster's Dictionary 2021 (showing same definition).)  Because Kajeet's proposed construction is without intrinsic support and contrary to the dictionary definition, the Court should reject this proposal and find that no construction is necessary for this term.

### 1.    The Intrinsic Record's Use of the Term "Request" Underscores It Should Be Construed as Plain and Ordinary

The instances in which the term "request" is used in the claim all comport with the ordinary dictionary definition.  Claim 27 requires the computing device to "send[] to a server a request to communicate with a remote computing device."  (D.I. 1-1, '559 patent at 18:41-42.)  Claim 27 further recites the computing device "receiv[es] in real-time from the server a decision granting or denying the request."  (*Id.* at 18:43-44.)  Although the claim requires that the computing device "disabl[es] the communication when the decision denies the request," (*Id.* at 18:47-53), nothing in claim 27 requires that the "request" explicitly seek "permission" to perform any action.

Similarly, the specification uses the term "request" according to its plain and ordinary meaning, providing a variety of examples that are not necessarily restricted to a "communication seeking permission," as Kajeet contends.  For example, the specification discusses "a request to download some type of content, such as a game, a ringtone, a website, a picture message, a text message, etc."  (D.I. 1-1, '559 patent at 8:60-67.)  The '559 patent further states that: "the user's request may not have anything to do with making a call or downloading content, but rather just to

use some feature or function of the device, such as a game that is already stored on the device." (*Id.*)  In these examples, the "request" may not seek any sort of permission and may instead simply identify the particular content being sought.  (Ex. B, Madisetti Decl. at ¶ 41.)  Thus, nowhere in the specification is the term "request" defined or limited to a "communication seeking permission."

### 2. Kajeet's Previous Expert Witness Tacitly Agrees with the Plain and Ordinary Interpretation

In a previous case relating to the same '559 patent, Kajeet's technical expert, Dr. Knutson, offered declaration testimony that undercuts Kajeet's new, narrow proposed construction.  Rather than run away from Dr. Knutson's opinions, Kajeet incorporated his previous declarations into its complaint in this case by reference, and his declarations therefore bear relevance to the present issue.  (D.I. 1, Complaint at 14 fn. 3.)  Specifically, Dr. Knutson opined that: "[s]uch a 'request' may or may not coincide with a specific action on the part of the user" and referenced an example of a child using a managed computing device to access a first website that then redirects the device to request content from a second, restricted website.  According to Dr. Knutson, "[i]n this instance, with no involvement on the part of the child, the browser makes a forbidden request at the behest of a remote communication device" and highlighted that such scenarios are purportedly "anticipated by the Patents-in-Suit."  (Ex. 9, 12/20/2018 Knutson Decl. at ¶ 26.)

Thus, Kajeet's own expert witness tacitly agrees that "request" is used in the plain and ordinary sense, and that such a request contemplated by the '559 patent claims may not seek any sort of permission.

### 3. Kajeet's Proposed Construction Introduces Unnecessary, Ambiguous, and Confusing Terminology and Should Be Rejected

Kajeet's proposed construction also should be rejected because its use of the term "communication" in the definition of the term "request" would introduce unnecessary and redundant claim language that would actually confuse, not clarify, the meaning of the term for a

potential juror.  As shown below, when Kajeet's proposed construction of the term "request" is inserted into the claim, the distinction is lost between the "request," which is sent from the managed computing device to the server, and the separate, underlying "communication" that the managed computing device is trying to send to the remote computing device.  This is because the claim now recites two different "communications," but does not provide the necessary context to define which "communication" is referenced at each and every particular instance.

The chart below compares the actual language of claim 27 with the language as it would be modified if Kajeet's proposed construction is inserted to demonstrate precisely why Kajeet's construction would only make it more difficult for a juror to apply the claim:

| Claim 27 as Issued | Claim 27 with Kajeet's Construction[9] |
|---|---|
| [27.pre] A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising: | A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising: |
| [27a] sending to a server a **request** to communicate with a remote computing device over the communication network | sending to a server a **communication seeking permission** to communicate with a remote computing device over the communication network; |
| [27b] receiving in real-time from the server a decision granting or denying the **request**, the decision being based on a policy stored at the server and configured by an administrator and | receiving in real-time from the server a decision granting or denying the **communication seeking permission**, the decision being based on a policy stored at the server and configured by an administrator and |
| [27c] enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the **request** and by disabling the communication when the decision denies the **request**, the communication being enabled or disabled without storing the policy on the computing device. | enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the **communication seeking permission** and by disabling the communication when the decision denies the **communication seeking permission**, the communication being enabled or disabled without storing the policy on the computing device. |

---

[9] Language referencing the "request" is highlighted in yellow.  Language referencing the "communication" with the remote computing device is highlighted in blue.

Kajeet's proposed construction should be rejected because it will create confusion as to the claim scope.  Where, as here, the scope and meaning of a claim term is readily apparent from the plain language of the claim, it is inappropriate to provide jurors with a different construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *see also PerdiemCo, LLC v. IndusTrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 WL 3633627, at *30 (E.D. Tex. Jul. 7, 2016) (finding term requires "no construction" because the scope of the term is "clear from the claim language.").  Accordingly, a proposed construction that would make the claim more confusing to a juror also should not be adopted.  *See, e.g., j2 Glob. Commc'ns, Inc. v. Vitelity Comms., LLC*, 2013 WL 5220173, at *6 (C.D. Cal. Sept. 13, 2013) (finding proposed claim construction introduces "unnecessary surplusage" and noting "[a]dding unnecessary verbiage is likely to confuse the jury, and, thus, frustrate one of claim construction's chief purposes") (citations omitted); *see also Heat Techs. v. Papierfabrik August Koehler SE*, No. 18-cv-01229-SDG, 2020 WL 9460993, at *11 (N.D. Ga. Nov. 10, 2020) (rejecting proposed construction because "it includes unnecessary and repetitive language already present in the claim when considering the claim term within its context").

Thus, the Court should apply the plain and ordinary meaning of the term "request" as the scope and meaning is readily apparent from the language of the claims and because the specification lacks *any* definition or other language denoting lexicography.

## V.    Conclusion

For the reasons discussed above, Trend Micro, Inc. respectfully requests that the Court adopt its proposed constructions of the disputed claims terms.

Dated: November 5, 2021                    Respectfully submitted,

                                           */s/ Katherine P. Chiarello*
                                           Katherine P. Chiarello
                                           Texas State Bar No. 24006994
                                           katherine@wittliffcutter.com
                                           WITTLIFF | CUTTER, PLLC
                                           1209 Nueces Street
                                           Austin, Texas 78701
                                           (512) 649.2434 office
                                           (512) 960.4869 facsimile


                                           Charanjit Brahma (*pro hac vice*)
                                           Benesch Friedlander Coplan & Aronoff LLP
                                           100 Pine Street, Suite 3100
                                           San Francisco, CA 94111
                                           (628) 600.2241 office
                                           (628) 221.5828 facsimile


                                           Manish Mehta (*pro hac vice*)
                                           Cristina Almendarez (*pro hac vice*)
                                           Samuel J. Ruggio (*pro hac vice*)
                                           Benesch Friedlander Coplan & Aronoff LLP
                                           71 South Wacker Drive, Suite 1600
                                           Chicago, IL 60606
                                           (312) 212.4953 office

                                           ***Attorneys for Defendant Trend Micro
                                           Incorporated***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that, on November 5, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Kathrine P. Chiarello*
Katherine P. Chiarello

*Attorney for Defendant Trend Micro, Inc.*