**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **KAJEET, INC.**         *Plaintiff* <br><br> *vs.* <br><br> **TREND MICRO, INC.,** <br><br>         *Defendants* | **6:21-CV-389-ADA** |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendant Trend Micro Inc.'s ("Trend Micro") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California, or in the alternative, for intra-district transfer to the Austin Division. ECF No. 19. Plaintiff Kajeet Inc. ("Kajeet") filed its Response (ECF No. 21), and Trend Micro filed its Reply (ECF No. 22). After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Trend Micro's Motion to Transfer to the Northern District of California. The Court reserves its decision on the alternative motion to transfer to the Austin Division for a later time.

## I. FACTUAL BACKGROUND

Plaintiff Kajeet filed this lawsuit accusing Defendant Trend Micro of infringing on claims 1 and 27 of U.S. Patent No. 8,667,559 ("the '559 Patent"). ECF No. 1. The '559 Patent describes "improved control schemes implemented on communication devices, focusing on applications in which it is undesirable for the user of the communication device to have unfettered or unconstrained access to some or all of the available functionality supported by the communication device." ECF No. 21 at 1. Kajeet alleges that Trend Micro designs, develops, and sells products

1

that practice the technology of the '559 Patent. *Id.* at 2. The accused products include Trend Micro's Premium Security Suite, Maximum Security, Internet Security, and Mobile Security products. *Id.*

Trend Micro is a limited liability company organized under the laws of California with its principal place of business in Irving, Texas. ECF No. 1 at 1. Trend Micro maintains offices in both the transferor and transferee districts: one office located in San Jose, California and another in Austin, Texas. ECF No. 21 at 2. It conducts research and development for its products in Taipei, Taiwan. ECF No. 19 at 1.

Kajeet is a corporation organized under the laws of Delaware. ECF No. 1 at 1. Its principal place of business is in McLean, Virginia. *Id.* Kajeet has filed three separate cases in this District that all assert infringement of the '559 Patent, one of which has been voluntarily dismissed since the filing of Kajeet's Motion. ECF No. 21 at 3. *See Kajeet, Inc. v. Viasat, Inc.*, No. 6:21-cv-707 (W.D. Tex. July 8, 2021) (voluntarily dismissed); *Kajeet, Inc. v. Lumen Technologies, Inc.,* No. 6:21-cv-705 (W.D. Tex. July 7, 2021); *Kajeet, Inc. v. Infoweise Pty. Ltd.*, No. 6:21-cv-704 (W.D. Tex. July 7, 2021).

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an

'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed

in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.*, 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Trend Micro asserts that this case could have originally been brought in the NDCA because it regularly conducts business out of its San Jose office. ECF No. 19 at 5. Kajeet does not contest this point. This Court finds that venue would have been proper in the NDCA had Kajeet originally filed this case there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A. The Private Interest Factors

#### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs

in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

The first and most important consideration is the documentary evidence coming from the accused infringer, Trend Micro. Both parties classify those relevant documents into three categories: 1) technical documents, 2) sales documents and financial information, and 3) marketing and advertising documents. Because the research and development of the accused products occur in Taiwan, the technical documents likely reside there. Although Trend Micro argues that those documents can be made available in San Jose, there is no reason why they could not be made available at its Irving headquarters or its Austin office. ECF No. 21 at 7. Second, Trend Micro admits that "[d]ocuments relating to the sales and financials concerning the Accused Products will likely be collected from the Irving office." Ex. A at ¶ 8.  Finally, Trend Micro's marketing documents likely reside in the San Jose office, which, according to Trend Micro, "is dedicated to U.S. and global marketing and advertising for its consumer-based products." *Id.* at ¶ 8.

A secondary consideration is the documentary evidence coming from the plaintiff. Kajeet indicates that all its relevant evidence is already located in Fort Worth, Texas at the offices of its outside counsel. ECF No. 21 at 7. Although evidence from the patent owner will ordinarily be less important when analyzing this factor, Kajeet notes that highly relevant evidence, including documents relating to the '559 Patent, its file history, and Kajeet's license and settlement agreements are all in Fort Worth. *Id.*

The sources of proof in this case come from Taiwan, San Jose, Irving, and Fort Worth. Taiwan likely has the most relevant evidence in this case because those technical documents are necessary for Kajeet to develop its infringement case. Their location abroad favors neither district, as inspection of those documents could be made in any of the California or Texas Trend Micro

offices. The second group of relevant evidence would be the sales and financial information, which would be highly relevant to damages. Those documents are in Irving, which is neither in the NDCA nor the WDTX. But to wholly disregard the documents in Irving would be inconsistent with the Fifth Circuit's instruction in *Radmax* that the focus should be on *relative* ease of access to sources of proof. *See Radmax*, 720 F.3d at 288. Because the documents in Irving are 90 miles from Waco, but roughly 1,450 from the NDCA, the access to sources of proof would be relatively easier—by 1,360 miles—in the WDTX. Lastly, the marketing documents in San Jose could be highly relevant to Kajeet's infringement case.

Because neither party asserts that any documents are in the WDTX, more relevant documentary evidence likely resides in the transferee district than the transferor district. But the Court finds that this difference is slight at best because Trend Micro's sales and financial information and all documentary evidence from Kajeet, though not within the boundaries of the WDTX, are much closer to the WDTX than the NDCA.

For those reasons, this Court finds that the relative ease of access to sources of proof factor slightly favors transfer.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-

00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Although both Kajeet and Trend Micro mention the relevance of party witnesses, this Court does not address party witnesses under the compulsory witness factor. *See In re Juniper*, 14 F.4th 1313, 1316 (Fed. Cir. 2021) ("the private factors are . . . (2) the availability of compulsory process to secure the attendance of *non-party witnesses* whose attendance may need to be compelled by court order…") (emphasis added). The Court will only consider non-party witnesses in analyzing this factor, with party witnesses analyzed under the "convenience of willing witness" factor below. Both parties, however, fail to identify any third-party witnesses in any of their briefs. Without any indication that a non-party witness has testimony relevant to this case, the Court cannot say one district will be more convenient than the other for this factor.

Because the parties cannot identify any third-party witnesses, the Court finds that this factor is neutral.

### iii. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as

the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.*

There are several groups of witnesses that this Court must consider. The first group of witnesses are the employees from Trend Micro's Taipei office. These unnamed individuals will be designated as fact and/or corporate Rule 30(b)(6) witnesses because many have knowledge relating to the research, development, and operation of the accused products. Ex. A at ¶ 6. Trend Micro argues that because California is closer to Taiwan than Texas, the NDCA would be cheaper and more convenient for those witnesses.

There are a few problems with Trend Micro's argument here. First, the Federal Circuit has instructed that when the witness must travel a significant distance no matter where they testify, the difference between traveling to California and Texas is slight at best. *In re Genetech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the circuit stated "the '100-mile' rule should not be rigidly applied" and that "witnesses from Europe [would] be required to travel a significant distance no matter where they testify" when comparing travel to the NDCA and Eastern District of Texas). *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). Trend Micro thus overstates the difference in travel to the NDCA versus the WDTX because employees from Taiwan would have to travel a significant distance no matter

8

where they testify. Those witnesses will be removed from their communities for roughly the same amount of time should they travel to either district. Second, Trend Micro admits that the WDTX would still be convenient for its Taiwanese witnesses. Because Trend Micro has an office in Austin, it "can easily make its witnesses available for depositions" in its Austin office. Ex. A at ¶ 12. Similarly, the foreign witnesses could work out of the Austin office during trial and drive up to Waco on the day they are called to testify. The same, of course, could be said of the NDCA because the Taiwanese employees could also work out of the San Jose office during a trial in the NDCA.

The second group of witnesses are the Trend Micro employees in the San Jose office. Trend Micro asserts that the San Jose employees will also be fact and/or corporate Rule 30(b)(6) witnesses because those employees may have knowledge of marketing and advertising for the accused products. Like the Taiwanese employees, any San Jose employees traveling to the WDTX for trial could similarly work out of the Austin office, thus lessening the burden of being away from work. But the NDCA would, of course, still be more convenient for those employees residing in San Jose.

The third group of Trend Micro witnesses are the employees in the Austin office. Trend Micro employs approximately 140 individuals in this District but has indicated that those employees are unlikely to be designated as fact or corporate Rule 30(b)(6) witnesses. Ex. A at ¶ 12. Kajeet does not contest this point, and this Court has no reason to believe that those Austin employees would have relevant material testimony.

The final group of witnesses are the employees at Trend Micro U.S. global headquarters in Irving. Trend Micro admits that individuals with relevant knowledge relating to sales and financial information work in the Irving office. *Id.* at ¶ 8. Because Irving is 90 miles from the Waco

courthouse, and approximately 1,450 miles from the NDCA, it would be much more convenient to attend a trial in Waco. For these witnesses, airfare and lodging would not be required. But just as the San Jose employees could work in Austin, so too could the Irving employees work in San Jose should trial proceed there.

This Court must also consider the cost and convenience of a trial in the WDTX for Kajeet witnesses. Kajeet's principal place of business is in McLean, Virginia. The travel time from Washington D.C. (which Trend Micro identifies as the closest airport) to Waco is approximately five total hours (when considering the 3.5 hour flight plus the 1.5 hour drive from DFW or Austin), while the total travel time from Washington D.C. to San Francisco is approximately six hours (which could be extended if the case is transferred to a different division). But as explained earlier, because these witnesses would have to travel a significant distance to either district, the difference between traveling to California and Texas is slight at best. *See In re Genetech*, 566 F.3d at 1344.

It is difficult for this Court to analyze this factor when neither party identifies any witnesses by name or job title. It is similarly unclear how many witnesses may reside in each district, or which witnesses will have more relevant testimony. The Court is left to speculate on groups of witnesses that may reside in one of Taiwan, San Jose, Irving, or McLean. For the reasons articulated above, the Court will consider the convenience of the witnesses from Taiwan and McLean as neutral because they will have to travel significant distances no matter where the testify. For the witnesses from San Jose, the NDCA would be more convenient; for the witnesses from Irving, the WDTX would be more convenient. But this Court cannot determine from Trend Micro's briefing of this factor that there are more potential witnesses in the NDCA than the WDTX. When that occurs, the Federal Circuit has instructed that a district court acts reasonably in refusing to weigh the willing witness factor in favor of transfer. *In re Overhead Door*

*Corporation*, 2022-100, 2021 WL5816634, at *2 (Fed. Cir. Dec. 7, 2021) ("We have also held that a district court acts reasonably when it refuses to weigh the willing witness factor in favor of transfer if unable to determine from the movant's presentation of the factor that there are more potential witnesses in the transferee venue than the plaintiff's chosen forum.") (citing *See In re Apple Inc.*, 743 F.3d 1377, 1378 (Fed. Cir. 2014)).

For those reasons, the Court finds this factor to be neutral.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

The existence of two co-pending cases raises practical problems to transferring this case. Kajeet has filed two other cases against various defendants, and in each case Kajeet also asserted the same patent as it did in this one. *See Kajeet, Inc. v. Lumen Technologies, Inc.,* No. 6:21-cv-705 (W.D. Tex. July 7, 2021); *Kajeet, Inc. v. Infoweise Pty. Ltd.*, No. 6:21-cv-704 (W.D. Tex. July 7, 2021). Although it is true that this factor alone is not dispositive, this Court has previously held that when there are parallel actions involving the same patents, this factor weighs heavily against transfer. *See NCS Multistage v. Nine Energy Serv.*, C.A. No. 6:20- 00277-ADA, 2021 U.S. Dist.

11

LEXIS 60219, at *8 (W.D. Tex. Mar. 30, 2021). Transfer of this case to California, while the other two cases involving the same patent proceed here, would create significant practical difficulties. As Kajeet notes, there are overlapping factual and legal issues with the present litigation that are relevant to invalidity and claim construction. ECF No. 21 at 3. Not only would two courts be ruling on the same patent asserted by the same plaintiff, thus wasting judicial resources, but there would also be the risk of inconsistent rulings on the '559 Patent. Significant judicial economy would be gained by trying all four cases in the same court.

　　For those reasons, the Court finds that this factor weighs against transfer.

## B. The Public Interest Factors

### i. Administrative Difficulties Flowing from Court Congestion

　　This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

　　Kajeet argues that this factor disfavors transfer because the average time-to-trial is much shorter in this district than the NDCA. Trend Micro argues that Kajeet's cited statistics of the average time-to-trial in the NDCA being 34.1 months are "pandemic-infested statistics" that do not relate to the current situation. ECF No. 22 at 5. But even if the NDCA courthouses are still open, the backlog caused by their prior closures is still relevant because delays in postponed cases

affect the district's ability to resolve this case expeditiously. Recent data from the past few years indicated that this Court has been able to bring patent cases to trial in approximately two years after the filing of the complaint. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC*, 2020 WL 6439178 (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*, 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial). By contrast, the NDCA, on average, takes over one year longer to get patent cases to trial. ECF No. 21 at 10. In recent decisions by this Court on motions to transfer, the parties have identified even bigger disparities in the time-to-trial statistics. *See Ocean Semiconductor v. Renesas et al.*, No. 6:20-CV-1213 (W.D. Tex. Dec. 3, 2021) (comparing median time-to-trial in the NDCA of 4.88 years to the WDTX's 1.93 years).

The substantial disparity in the time-to-trial statistics show that this factor disfavors transfer. There is clearly an appreciable difference in in the degree of docket congestion, insofar as it relates to time-to-trial. That is bolstered by this Court's proven track record in expeditiously resolving patent cases specifically. Rapid disposition of this case is important given the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080

(Fed. Cir. 1989). The Federal Circuit has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016).

For those reasons, the Court finds this factor disfavors transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

The NDCA would likely have a local interest in this case. Trend Micro is a California corporation with an office in the NDCA. That San Jose office conducts marketing and advertising for the accused products, meaning that events forming the basis of infringement would have occurred in that office. Because this case could call into question the work and reputation of several individuals who work in the community, the NDCA would have a localized interest. *See, e.g., In re Hoffmann-La Roche Inc*., 587 F.3d 1333, 1336 (Fed. Cir. 2009).

The WDTX likely also has a localized interest. First, Trend Micro headquarters in Irving give the WDTX a local interest. It is immaterial that the executives and employees who work there presumably reside in the Northern District of Texas and not the Western District. Although a judicial district line separates Waco and Irving, there are no roadblocks on the 90-mile stretch of I-35 that obstruct the local interest from extending into this community. Indeed, the Federal Circuit has indicated that a localized interest remains when the employees reside near the district. *See In re Hoffmann-La Roche Inc*., 587 F.3d at 1336 (Fed. Cir. 2009) ("the Eastern District of North Carolina's local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or *near* that district and who presumably conduct business in that community.") (emphasis added). By establishing its headquarters near this venue, Trend Micro has given Waco a localized interest in this case. Although the same could be said of the employees of the Austin office, Kajeet has failed to tether the events forming the basis for infringement in this case to the Austin office. The Federal Circuit has held that a generalized presence of office space is insufficient to give a district a local interest. *In re Apple Inc.*, 979 F.3d at 1345. There is a nexus, however, with the Irving headquarters because that office controls sales for the accused products, making that office relevant to the infringement case. Finally, Kajeet argues that Trend Micro sells the accused products in this District. But as Trend

Micro notes, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue …." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

In sum, both districts likely have a local interest. But the parties have failed to establish that one district's interest is stronger than the other. For the foregoing reasons, the Court finds this factor to be neutral.

### *iii. Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Disfavors transfer |
| Administrative difficulties flowing from court congestion | Disfavors transfer |

16

| Local interest | Neutral |
| --- | --- |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Four factors are neutral, one favors transfer, and two disfavor transfer. Although more sources of proof likely reside in the NDCA than the WDTX, that is not sufficient to tip the balance in favor of transferring the case. The movant must show that the transferee district is clearly more convenient, and Trend Micro has failed to meet that burden. The practical problems created by co-pending cases in the WDTX, along with this Court's ability to resolve cases expeditiously, would make trial in this case easier and cheaper in the WDTX. Those factors are often not dispositive, but without proving that more witnesses, whether willing or unwilling, reside in the NDCA than the WDTX, this Court cannot say that the NDCA would be clearly more convenient.

**IT IS ORDERED** that Defendants' Motion to Transfer Venue to the Northern District of California is **DENIED.** The Court reserves its decision on the alternative motion to transfer to the Austin Division for a later time.

SIGNED this 12th day of January, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE